## BRYAN v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit.
February 25, 1927.)

No. 4850.

1. **Criminal law** ⟨⟩417(11)—**Conversation between third persons, after defendant's arrest, as to concealing evidence, held inadmissible, absent evidence of authority from defendant.**

Admission of testimony of a witness that on the morning after defendant's arrest she was visited by a third person, and of the conversation between them, which tended to show that the visitor was attempting to conceal evidence against defendant, in the absence of any evidence that defendant authorized or had knowledge of such visit, *held* prejudicial error.

2. **Criminal law** ⟨⟩422(1)—**Declarations of coconspirator are not binding on others after conspiracy is broken up or abandoned.**

Declarations or conduct of a conspirator, after the conspiracy has been abandoned or broken up, are not binding on coconspirators.

In Error to the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Criminal prosecution by the United States against Tom Bryan. Judgment of conviction, and defendant brings error. Reversed.

C. G. Dibrell, of Galveston, Tex. (Elmo Johnson, of Galveston, Tex., on the brief), for plaintiff in error.

H. M. Holden, U. S. Atty., of Houston, Tex. (Howell Ward and R. F. Wiseheart, both of Houston, Tex., on the brief), for the United States.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge. This was a prosecution against five defendants under an indictment charging them, and others unknown to the grand jury, in the first count with a conspiracy to import into the United States, and after importation to conceal, possess, transport, and sell, intoxicating liquor, in violation of the customs and prohibition

laws. Four other counts charged the substantive crimes alleged in the first count to be the objects of the conspiracy. One of the defendants was acquitted, two were convicted on the third, fourth, and fifth counts, and the remaining two, Tom Bryan and John Gambino, were convicted on all counts. Bryan alone has sued out writ of error.

According to the government's evidence, in December of 1924, two motorboats, the Emmy and the E-301, landed at night on Galveston Island, about 20 miles west of the city of Galveston. They were loaded with liquor, which they were attempting to smuggle in, and were met by three trucks. Members of the Coast Guard Service came up as the liquor was being transferred from the boats to the trucks. They fired into the air, whereupon a number of men, variously estimated at from 12 to 18, fled; but two of the defendants, Sanderfer and Roubion, were found about the boats or trucks, and arrested. A man named Ison was seen near by on the beach, but he was not indicted. The boats, with their cargoes, and the trucks, were seized. The defendant Gambino was the owner of the Emmy. The E-301 had formerly been owned by one Sherban, but he had been killed by a customs officer, and in April, 1924, that boat had been sold under forfeiture proceedings. Sherban's widow became the nominal purchaser at the forfeiture sale on a bid of $255, and the E-301 was then registered in her name, and so remained at the time of the seizure involved in this case. She became a bidder at the request of plaintiff in error, who furnished her $500 with which to comply with her bid. He authorized her to keep the balance of $245 left over from the purchase price.

She testified that in June plaintiff in error requested her to allow the boat to remain registered in her name, stated that he would pay her $500 more for it, and that he did pay that additional amount before it was seized. Mrs. Sherban further testified that, on the morning after the seizure, plaintiff in error's wife telephoned to her that the E-301 had been seized, and that later on the same day Ison, the man who was seen on the beach near the place where the boats landed, called at her home in Houston, stated that he was plaintiff in error's brother-in-law, and asked her if she knew that the E-301 had been seized, and that she replied that Mrs. Bryan had telephoned to her. Plaintiff in error and his wife lived in Galveston. Plaintiff in error did not object to Mrs. Sherban's testimony in regard to his wife's telephone message; but he did object, and except, to a question which elicited Mrs. Sherban's answer, to the effect that Ison asked her if she knew that the E-301 had been seized, and assigns the overruling of that objection as error.

[1] We are of opinion that the ruling complained of constitutes prejudicial error. Ison's conversation with Mrs. Sherban tended strongly to show that he made an attempt to conceal evidence that plaintiff in error was the owner of the E-301. That attempt could not be attributed to plaintiff in error, in the absence of proof that it was made by his authority, or with his knowledge or consent. The case against plaintiff in error depended on circumstantial evidence, but there was no circumstance which tended to show that he was responsible for Ison's attempt to conceal evidence of the crime which had been committed. Ison was seen by government witnesses near the place where the boats were landed in pursuance of the conspiracy, and it is entirely consistent with the evidence that his attempt at concealment was made to protect himself, or that he voluntarily took it upon himself to protect plaintiff in error, who was his brother-in-law.

[2] The government seeks to sustain the ruling on the theory that Ison, though not indicted, was a coconspirator, and consequently his declarations and conduct were binding on the other conspirators. But there is no evidence that the conspiracy continued beyond the time of the seizure, and it is well settled that the declarations and conduct of a conspirator are binding only upon himself after the conspiracy has been abandoned or broken up. It cannot be contended that the evidence was offered against Ison, because he was not on trial. Mrs. Sherban's testimony of her conversation with Ison was not rendered harmless, because merely cumulative, by reason of her other testimony to the effect that plaintiff in error's wife had previously notified her of the seizure of the E-301. The jury might well have concluded that plaintiff in error's wife telephoned of her own volition, and without his knowledge or consent, but that, in order to conceal evidence of his guilt, plaintiff in error authorized and requested his brother-in-law, Ison, to go from Galveston to Houston for a personal interview with Mrs. Sherban. The trouble and expense of such trip might well have been considered by the jury of greater significance than the telephone message.

The judgment is reversed, and the cause remanded for a new trial.